KEARSE, Circuit Judge,
dissenting:
I respectfully dissent.
As can be seen from the Majority Opinion, the City of Buffalo, for promotions to the position of fire lieutenant in its Fire Department, used a 1998 test that had statistically significant disparate impact on African Americans. Although Buffalo thus had the burden of proving that the test was “job related for the position in question and consistent with business necessity,” 42 U.S.C. § 2000e-2(k)(l)(A)(i) (emphasis added), it did virtually nothing to carry that burden.
Buffalo simply requested a test and sent Dr. Steinberg a sheet listing job specifications for the fire-lieutenant position. Buffalo had not responded meaningfully to any of Dr. Steinberg’s requests for meaningful data in the preparation of the 1998 Exam. It did not attend any of the exam-question formulation meetings to which it was invited (see Trial Transcript (“Tr.”) 86-87); and it apparently did not encourage its incumbent fire lieutenants to respond to the job-task survey circulated and to repeated follow-ups by Dr. Steinberg (see, e.g., id. at 59, 72, 135). Dr. Stein-berg’s overall project was to develop tests for all levels of fire departments. The *287 Buffalo Fire Department had 833 positions; Dr. Steinberg’s job-task survey elicited only 68 responses from Buffalo, and she could not say that any one of them related to the lieutenant position.
Dr. Steinberg also circulated a SKAP survey, ¿a, questions about necessary Skills, Knowledges, Abilities, and Personal characteristics. No one at any level of the Buffalo Fire Department responded to this survey. (See Tr. 62, 66.) Dr. Steinberg’s 1995-1997 Fire Service Job Analysis report stated that Buffalo “refused to participate at a meaningful level.” Dr. Steinberg testified that “Buffalo ... wouldn’t give [data] to me, although I three times asked them to.” (Tr. 72.)
Dr. Steinberg, who testified as a nonexpert, “presume[d]” (Tr. 71) that data she received from Syracuse and Binghamton, whose fire departments were far smaller than that of Buffalo, were also applicable to Buffalo and that she had enough information to fashion a test that would match the requirements of the fire lieutenant position in Buffalo. But I have seen no evidence in the record from which the trial court could verify her presumption. (Dr. Steinberg also testified that she inferred that the needs of Buffalo would match those of Albany (see id.); her report stated that Albany had submitted no meaningful response.) The Majority refers to “substantial empirical evidence,” Majority Opinion, ante at 277; but none of that evidence came from Buffalo. The Majority refers to “jurisdictional comparisons” (id); but several large cities in New York State refused to participate in Dr. Stein-berg’s survey, and, in any event, there were no possible comparisons with Buffalo. Dr. Steinberg responded to questioning as follows:
Q. ... [Y]ou couldn’t look at how [the data from other large jurisdictions] compared to the Buffalo data, could you, because you didn’t have any?
A. Nobody can look at how it compares to Buffalo data because Buffalo didn’t give us the data. That’s why we’re talking about other large fire departments.
Q. So you’re saying, as I understand it, I guess Buffalo must be the same as the other large fire departments?
A. I guess the evidence is that it would be highly unlikely that they would be different. That was the process I used throughout.
(Tr. 354 (emphasis added).)
After the test was prepared, it was sent to Buffalo for approval. There is no evidence that anyone in or knowledgeable about the Buffalo Fire Department even looked at it. The City’s Civil Service Director Olivia Licata testified that the City did not, to the best of her knowledge, undertake any steps to validate the Exam. (See Tr. 366-67.) Her records indicated that after she (in her then-capacity as personnel specialist) sent the proposed 1998 Exam to the Fire Department for approval, she received no response. (See id. at 361, 366.) Without a response, the apparent routine was just to proceed with ordering the test. (See id. at 366.) And although Licata testified that she — a non-expert&wkey;would usually check to see whether the exam got into areas that were not in the job specifications (see id.), the City presented no evidence that anyone more expert than Licata performed such an evaluation.
At trial, Buffalo presented no expert testimony to validate the test. Nor did it present evidence that it had ever hired an expert with respect to any phase of the test’s conception or preparation.
Thus, with no “expert opinion that the statewide job analysis was suitable to the *288 Buffalo Fire Department,” Majority Opinion, ante at 278, the district court allowed Buffalo to avoid liability for its use of a racially discriminatory test on the ground that Buffalo had proven content-validity
• without participating in the test preparation,
• without hiring an expert to advise it in advance whether the test, prepared solely through the efforts of others, would be suitably related to the job in question,
• without hiring an expert thereafter to evaluate the content-validity of the test given and to testify to its validity,
• without reference by the test’s creator to any data to substantiate her “guess” and her “presum[ptionj” that the data she received from others reflect Buffalo’s undisclosed needs,
• without presenting any evidence that any of Buffalo’s own knowledgeable personnel ever looked at the Exam materials to determine whether the areas in which questions were, or were to be, posed were material to the job in question, and
• without making any attempt to show that the weighting of the areas on the Exam reflected the requirements for that position in Buffalo.
I am not persuaded that the evidence was sufficient to support the district court’s finding that Buffalo carried its burden of proving that the test that was administered was job related for the position of fire lieutenant in Buffalo.
And given the Supreme Court’s recent decision in Ricci v. DeStefano, 557 U.S. 557, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009), holding that a municipality may not refuse to certify a test that has disparate racial impact unless the municipality has a strong evidentiary basis for believing that certification would subject it to disparate-impact liability, it strikes me that this affirmance — allowing Buffalo to avoid liability without having made any effort whatever to seek, verify, or defend the test’s validity — will make it virtually impossible for a municipality not to certify for use a test that has clear discriminatory impact.
Accordingly, I respectfully dissent.